to Phoenix and on a truck from Phoenix to the Scottsdale facility. For some inexplicable reason, when it got to the Scottsdale facility, this watch was included in two boxes which was in a pouch. You have to think about the fact that at the time that the pouch was tendered to FedEx, that's a very unusual way to send something by FedEx. But FedEx nevertheless accepted the tender and the package made its way to the system. What do you mean by unusual? It's unusual because if you look at the FedEx rules, usually it should be in a cardboard box. This was in a pouch that is subject, of course, to various vigorities as it's traveling along the system. The pouch came from where? From the watch manufacturer? No. The watch came from the country club in Montana. The pouch did? Yes, ma'am. What was in the other box? Well, there were two boxes. One box had the watch and the other box had a number of paraphernalia with respect to the watch, a watch holding deal, if you will, and some shirts and things of that nature. So there were two packages and two boxes, one that had the box and the other that had unrelated matters in connection with the watch. So the watch gets to the Scottsdale facility, and as the record reflects, the Scottsdale facility has cameras throughout the entire facility. At some particular point in time, the pouch is taken off the conveyor belt. One of the boxes is removed from the pouch. The pouch is placed back on the conveyor belt and continues on. This happens at the only place in the FedEx Scottsdale facility where there's no video camera. The pouch continues on its way on the conveyor belt, and that pouch is ultimately delivered to Mrs. Breslow. We've never ever seen what happened to the other watch. As a result of that, we paid, Pennsylvania Insurance Company paid $250,000 to Mrs. Breslow and was subrogated to that claim and then filed suit against Federal Express in the district court in Nebraska. We alleged breach of contract, negligence, unjust enrichment, conversion, and civil theft. FedEx filed a motion for summary judgment on the basis of the Airline Deregulation Act, and the district court, at the summary judgment, dismissed the negligence claim, dismissed the unjust enrichment claim, dismissed the civil claim, dismissed the conversion claim, but held the breach of contract claim was, in fact, going to proceed. However, it adopted the release value doctrine and indicated that it would be limited to $100 at trial. Why was this case filed in Nebraska? That is where Pennsylvania Insurance Company has its main office, Your Honor. So that's why it was filed in Nebraska. And there was no, ultimately, no challenge to that jurisdiction. Hold me with the name of the company. Yes. So our position here, Your Honor, is that we're asking the court to reverse the summary judgment with respect to the fact that conversion is an exception to the release value doctrine. And there's evidence in the record, and this is on a summary judgment, there's evidence on the record that an individual from FedEx physically took the box out of the pouch. Even at trial, the witness from FedEx could not explain why an individual at FedEx in Scottsdale would actually reach into the pouch, take out a box, and then let the pouch continue on its way. We think that based on that fact alone and the inferences that were entitled to get on summary judgment, the court was in error in sustaining the motion for summary judgment and limiting our damages to $100. What exactly was seen on that video? Because I thought there was some question about, from the district court, about what was actually visible and what video she saw. She looked at all the, at trial, indicated that she was going to look at all the videos. She certainly did not see as much as she thought when she initially looked at the videos. But there's no question that somebody, that the FedEx employee physically took the pouch off of the, and took a box out. Well, are you saying that that's what you are concluding? Or is that visible on a video, a person taking, putting their hand in the bag and taking out a box? I think the video shows that, that there is, physically shows the pouch being taken off the conveyor belt. And it's not, does not show somebody putting their hand into the pouch. But it does show the pouch being taken off the conveyor belt and then being placed back on the conveyor belt to continue its journey, but only with one box inside. And we know it's only one box inside because it didn't arrive in your client's hands with another. That's correct, Your Honor. Is there evidence that there was, that there was no, no point after it was replaced on the conveyor belt and the time it arrived at your client's location that something could have happened then? Well, the problem, Your Honor, is nobody knows what happened to that other box. I guess my point is, are you, are you inferring or sort of concluding that it must have been taken out then? Or do you have some, is there another piece of evidence that you can piece together to say that, no, that was the moment it was taken out? I don't have other evidence that I can say can piece together. What I do have, if we're relying basically on the summary judgment standard, is the inference that this pouch came in with two boxes and it left with one box. And we have the video showing that... What's the evidence that it came in with two? That was the evidence that was, that came from the country club when the package... Who testified from the country club? Nobody testified from the country club at trial, Your Honor. All right. What's the evidence that there were two boxes in the bag? Who testified to that or who put on evidence of that? We did not put on evidence that there were two boxes in the bag. The evidence was from Mrs. Breslow that when they repackaged the boxes in the country club, that two boxes were placed into the pouch. Was she present when the... She was not present. She was directing it, but she was not present at that facility, Your Honor. And on your conversion point, if I may switch to a legal question. It seemed to me there was some authority indicating that conversion, even assuming it happened by a rogue employee, would not necessarily be attributed to the company. What's your view on that question? Sure. And I look for cases, Your Honor, that involve the release value doctrine and a conversion by an employee. I know the case law says that conversion by an employee alone may not be enough to get you out of the release value doctrine. But the fact of the matter is a corporation can only act by its employees. So if somebody is acting in the course and scope of their employment for FedEx and they physically convert something, as we suggest it happened here, it's attributable to FedEx. Your number — I don't think you're ever going to find, and I didn't find, a case that says that a conversion that occurs by an employee of an entity is somehow going to excuse you or not excuse you from the conversion. I haven't found a case that talks about that. I found cases that say the conversion must be significant and cannot be only of an employee. But my question, I guess, rhetorically is a corporation can only act by its employees. How does a conversion occur by a corporation if it doesn't occur by its employee? And in this case — Well, could it be that those cases are distinguishing between employees who are authorized by the company to make the conversion versus those who are acting contrary to the company's policy? I mean, you could have a bad actor company that decides to convert. You sure could, Your Honor. But I don't think you're going to find a situation where somebody in the corporation is going to specifically authorize an employee to go ahead and do a conversion. In this case, whatever the purpose of that employee was, obviously he's an employee watching the packages come by. And we know that FedEx knows at any particular time, at any particular point, where that package is. So in this case, this individual — and again, I go back to the evidence from FedEx's own employee who says, I have no understanding or reason to explain why an individual would reach into a pouch and take a package out. This pouch should have just gone along the conveyor belt. And if it had gone along the conveyor belt, it would have been delivered to Ms. Breslow. Well, Counsel, what about the other circus cases that talk about core services, C-O-R-E, core services and core business practices and say we can't start on civil theft, getting into when a theft occurs and how it does, because then you're into the core business and that does fall under the released value doctrine? I disagree with that, Your Honor. You know, the Tobin case is the main one I'm referring to, Counsel. Exactly. I understand that case. But we have to find, at some point in time, you have to distinguish and indicate under the released value doctrine when that conversion occurs. A conversion cannot happen — I go back to my point — cannot happen unless somebody is working in the course and scope of their employment. We don't have any evidence from FedEx that they did either criticize this employee or took any corrective action against this employee. So I think, again, we're at the summary judgment stage. I think we're entitled to the inference that that was done at the request and direction of FedEx. And if that's the case, then I think we get out of the released value doctrine or at least we get there for a trial on the issue of the released value doctrine as opposed to a blanket indication that because we can't show where the watch was, the conversion doesn't work. That's all. If you have any other questions, I'll reserve the rest of my time for rebuttal. You may. Thank you, Your Honor. Thank you for your argument. Mr. Bernhardt, we'll hear from you. May it please the Court. Good morning. My name is Jason Bernhardt. I represent the appellee and the cross-appellant in this case, Federal Express Corporation. A plaintiff who demands a trial on a breach of contract claim, alleging that a cargo carrier is responsible for the loss of a package or the outright theft of a package, as is alleged in this case, at a minimum, at a minimum must prove that the missing item was actually tendered to the carrier, that there was a contract, including the terms and conditions of that contract, and that that plaintiff has an actual loss upon which it can base its standing. Here, a Pennsylvania insurance company failed to prove any of these minimal obligations. As a result, the district court committed clear error in entering judgment for $100 in favor of a Pennsylvania insurance company. The district court's first clear error relates to the absence of any proof that FedEx actually had this watch. Pennsylvania's entire lawsuit claims that the watch was not delivered to Sonny Breslau, yet Pennsylvania failed to introduce any evidence at all that the watch was actually inside any of the boxes that were tendered to FedEx. Well, we know it was in New York. Wasn't it repackaged in New York? No, sir. We don't know that at all. There was no testimony from Ms. Breslau. I thought the district court acted like that was true. Unfortunately, the district court did act like that was true. The problem is there's not a record for it. I think the district court was trying to help Pennsylvania out a little bit too much in this regard. So I want to be really clear.  Sorry? I don't know if you need to question the district court's motives. You just think she made an error, it sounds like. She definitely made an error because Pennsylvania failed to provide evidence so that she could cite evidence in the record in her opinion. And this part is important because Sonia Breslau was allowed to testify by deposition at trial. But if you look at the transcript, the court was clear that her testimony was only, as she testified about how the watch was supposed to travel, that she was only allowed to testify as to her belief of how it was supposed to happen, not as to her personal knowledge because she didn't know. You just said a minute ago, though, that there were boxes, plural, at FedEx. Is that established by the record? Yeah, and I guess I maybe want to come back to Judge Kelly's question. It is established that there were multiple boxes. Well, unfortunately, Pennsylvania didn't put the video that was at issue in the record, but Mr. Kelly testified about the video, what he saw in the video. So this Court has that. And what Mr. Kelly testified to was that at our Scottsdale facility, the yellow bag came in the shipping container as it should to go on a conveyor belt, and an employee grabbed the yellow sack, put it on the conveyor belt. There were apparently boxes inside of it. Reaches in the yellow bag, grabs one box out, looks at it for a label. There's a visible label on it. Attempts to scan the label, and it doesn't scan. Sets it on the conveyor belt, and I want to be really clear about this because Mr. Silver, I think, was incorrect in his assertion. The box goes back on the conveyor belt along with the yellow bag, and it goes down the line. So he testified he could see both a separate box and a yellow bag. He said it looks like based upon what it looked like when the bag was lifted, that there was at least one box inside of it. You could see weight to the bag, but he said he doesn't know. Sort of to your question earlier. Weight to the bag after the box was removed? That's correct. That would imply a second box in the bag. At least one other box, potentially more. This is the problem. We don't know. We don't know because, as you pointed out, Judge. I don't know what matters whether there's more than two. Well, it does matter because we don't – that's the point. That is the entire point is that there's nobody – How does that help you if there are three boxes? Well, the point is that we don't know what was given to FedEx. That's the point. It doesn't really matter. It sounds like you just established that it's not clear error to say there were two boxes in the yellow bag. I don't think it's – that's not our position. We're not saying it's clear error to say that – what it's clear error is to say that there was a watch that was given to FedEx. There's no record to support that. If the owner, the gift giver, says it came – now, she said it came to her with two boxes? She said she got one box. No, no. I mean, before – well, I guess she never had it at the country club. That's right. And no one from the – as you pointed out, no one from the country club testified what – this is important, too. There was testimony that when this package was received from Jacob & Company's New York store, that the people at the Iron Horse Golf Range unpackaged all of it and repackaged part of it, and part of that happened off camera. We don't know what was actually put in the boxes at the Iron Horse Golf Range because nobody testified what was ever actually received at the Iron Horse Golf Range. But we know that a yellow sack was given to a FedEx delivery driver for delivery. But wasn't there some testimony about why it was repackaged? Wasn't there something she wanted it to be repackaged in something less flashy, more brown paper baggish? I think the testimony on that was inconsistent, Judge. She – Ms. Breslau testified that she didn't ask anybody to repackage it. The woman at the Iron Horse Golf Club who never testified, but there was – the police report was introduced, and the police report recounts her statement, which is that Ms. Breslau specifically asked her to repackage everything. So it's really unclear why that happened. And this all came in without objection? Yes. Well, the police report came in conditionally. Ms. Breslau's testimony, there was different objections, but her testimony about not asking anybody to repackage it, that came in without objection. But the problem here is that there's an assumption built into the district court's finding that FedEx had the watch, and there is no testimony, no evidence whatsoever, not from Jacob & Company, not from Melka Meat, the private carrier that carried it from Switzerland or whatever, from Switzerland to New York and then New York to Montana. And certainly nobody from the Iron Horse Golf Club testified what was in the packages delivered to FedEx. In that absence, there can be no finding that FedEx is responsible for the loss of this item. Is your position is that you'd have to have some indication when you see the box of what's in it or that they'd have to open it up and actually testify, I saw a watch? Well, no. I'm just saying that there is no evidence here. I'm not saying what would be good enough evidence. I'm just saying there was no evidence here of what was inside any of the boxes or the yellow bag that was given to FedEx. Well, I guess I'm trying to figure out, like, would you have to open up the box before you send it as an evidentiary matter based on your position? I understand you're not saying what would be admissible, but I'm trying to figure out what more should have been done. I guess somebody says pack up this box and ship it by FedEx. Do you really look in somebody else's, you know, personal box to see what's in it? Just as a practical matter, I wonder if that would ever happen. Yeah, I mean, I don't want to go too outside the record there, but sometimes we do for a variety of reasons. But here, if the woman from the Iron Horse Golf Club had testified that she repackaged all of this stuff and there was a watch inside, we wouldn't be having this argument. This part would not be at issue. What if she said you just repackaged the boxes? Which is what the – that's essentially what the inferences are that Pennsylvania wants the Court to draw, but boxes are boxes, Your Honor. There's no indication of what's inside. Well, but isn't there some evidence that a watch was purchased and shipped to the golf club? No. There's evidence that Ms. Preslow purchased a watch. There's no evidence that – Did she say that she had it sent to the golf club to avoid the taxes in Arizona? She said that that's what she asked Jacob & Company to do, yes. But again, my one – Isn't that enough evidence to support an inference that the watch, in fact, was sent there by Jacob & Company? Respectfully, Judge, I just think that's too far of a stretch. For someone just to say I ordered a watch and ask them to ship it to me is simply not enough evidence to say that that carrier – Well, what about the New York evidence? I thought they were – based on what the trial court said, I thought there was more about what happened in New York. There's not. Tell me the facts of what happened in New York by the record. We don't know, Judge. There's literally nothing in the record about New York. All we know is that Ms. Preslow said that Jacob & Company shipped the watch from its manufacturing facility in Switzerland to a Jacob & Company store in New York. That's how it was supposed to go. But we have no idea what happened in New York. We don't know how long it was there. We don't know if it even was there. And that's the problem. I'd like to turn to the second clear that occurred in the district court's finding here, and that relates to the breach of contract finding. As you know, at the time of trial, all of Pennsylvania's claims had been dismissed pursuant to the ADA, which was a correct ruling. And so it insisted – several district courts have an outrageous conduct exception to the law. How do you address the outrageous conduct? You know what I'm talking about, the personal injury and this and that? You know, like when your FedEx employee shoots somebody or something like that. What do you say to that? That's surely outside the release value doctrine. Well, so I think you're talking about the Rombaum case. Well, that's one of them. There are others. Go ahead. Okay. I think what you'll find is when you look at the cases that deal with the Airline Deregulation Act, this is not a close call case. When you look at the – when you see cases where people are complaining about damage, delay, or loss of cargo, the courts are uniform that those are within the ADA strike zone. Those are preempted claims. What you'll see is that when the courts get into a little bit more difficulty, and this court actually dealt with it to some extent in the Watson case, when you're dealing with employment-type claims or when you're dealing with personal injury claims, and that's where the courts have sort of said, we're not really sure if this falls into the preemptive effect that Congress intended through the ADA. This is not that case, Judge. This is a cargo loss claims, and they all squarely fall in. And I would note that in Pennsylvania's briefing, they only cite a couple of personal injury cases. They bring to this court's attention no cargo loss claims, and there just aren't any. The courts are very uniform about these sorts of cases falling within the ADA preemption zone. What are you saying? What kind of loss? I'm sorry, Judge? What kind of loss are you referring to? What kind of loss? Yeah. I'm not following, Judge. I'm sorry. I couldn't understand the term you were using. I said these kinds of cases, these cargo-type losses. Cargo. Yes, Judge. Cargo loss, delay, damage type claims. Do you want to speak? You're spending your time on the cross-appeal. Maybe there's more to it than the $100 that I'm not grasping. But do you want to speak at all to the conversion point? Yeah. I think the conversion. If you don't win on your theory that there was no watch that was delivered to FedEx, then the insurance company says there should be a conversion ruling here. Right. Do you want to address that, or do you want to? Yeah. I mean, on the convert. Well, so there's a couple things on the conversion issue. The first is, at summary judgment, Pennsylvania's response on the conversion issue was just a few sentences. They didn't actually present any evidence to the trial court to support the claim. But what's really important is the law. The courts have been very clear that in order to bring a conversion claim outside the ADA, you have to show intentional or willful conduct by the carrier, and that the carrier converted whatever the item is for its own personal use. There is no evidence of that, and the district court made that finding in the district court's ruling, which is that nobody knows where the watch is. Are there any cases that have applied that exception to a company that converted something to its own use? You know, Judge, I don't know of any cases that have actually found. I can only speak for FedEx. We're not aware of any cases that have found a conversion, a viable conversion claim against FedEx. What I do know is that— I mean the cases that you were just referring to in the law books. Yeah, so I guess what I would say is— I'm trying to think of what's an example where that has happened. It's not—well, anecdotally, I understand that many, many, many decades ago, there was a situation where an employee had stolen a laptop and actually was using it, like kept it and was using it. And that would be a situation where you might be able to show an actual conversion because it's clearly intentional conduct where the item was kept for its own use. But was that a true—and that qualified as an exception even though it was personal use by the employee? I don't know how that case went, Judge. I don't know what the facts of the case are, but that's the only example I've ever heard in my practice at FedEx of something that might qualify as a conversion. But the important part is there has to be evidence that it was actually kept, you know, for the company's use. And on the issue of theft, I guess I would refer the Court to Blanco or Cash North American. Those are cases where FedEx was accused of stealing items. The Merhi case, we were accused of stealing the gold, and the courts had no problem in those cases dismissing the conversion claim because there's no evidence that FedEx kept those items for its own use or that it engaged in intentional conduct. In the last remaining seconds that I have, I do want the Court back to my cross-appeal to focus also on the lack of any evidence of a contract. There was no contract introduced at trial. There can't be a breach of contract finding if there's no evidence of a contract, what its terms or conditions are, and also the issue of standing. While there is a check in evidence that Pennsylvania paid Ms. Breslow a term of $50,000, there's no evidence that they had an obligation under any insurance policy to do so. There is no insurance policy. It's never been produced. Their complaint relies on an AIG policy and a policy from North American Casualty Company. And in the absence of any proof that they had some obligation to pay Ms. Breslow, they don't have standing. What's the ordinary contract between a shipper and FedEx? I'm sorry, Your Honor. What's the ordinary contract between a customer and FedEx? Well, there isn't necessarily. Never a contract? The service guide is a standard part of every contract with every shipment that FedEx handles. Why isn't that a contract here between the shipper and FedEx? Well, it's part of it. It could be part of it. The service guide could be part of the contract here and would be part of the contract. Why doesn't delivery plus the service guide constitute a contract? Well, my point, Judge, is that at trial there was no evidence. The Pennsylvania insurance did not introduce any evidence of a contract. They didn't offer the service guide. There's nothing in the record of what the contract terms are. And that's important because here you ask the question about is that it, and I said not always. The Iron Horse Golf Club had negotiated its own pricing agreement here, which has its own terms, and that those will be unique from shipper to shipper, and that was not introduced at trial as well. Thank you, Your Honor. Is there anything more to this than $100 that we're missing, that we don't appreciate on the cross-appeal? No. That's the total liability. The max liability, the issues are the absence of proof of the watch, proof of contract, and proof of standing. But even if you get over those humps, you get to $100. Yes, Your Honor. That's what's at stake. I understand the legal argument. Yes. Yes, Your Honor. Thank you for your argument. Thank you. Do you care to make rebuttal, Mr. Smith? Can I get an order? You may. I'm a little bit puzzled by the allegation that there's no contract because the only way you get the limitation of liability of $100 is by virtue of the contract. So you can't say that there's no contract and then have the $100 limitation because the $100 limitation is FedEx's position subsumed within the contract. And I think we have to also remember, and I'll sit down here, is we're still at a summary judgment procedure here, a summary judgment with respect to the conversion. And if the Court gives us the favorable inferences as we're entitled to, I think there's a triable issue of whether or not there was a conversion. I have not found, and again, I'll say it again, we have not found any cases that talk about what the employee has to do. And finally, I would say on the cross appeal, the judge's findings are entitled to significant deference. There's no evidence that they're clearly erroneous. She heard the testimony. She entered a judgment. The only problem with the district court is the limitation of $100. And we're asking the Court to reverse that and give us a trial on the merits with respect to the conversion issue. Do you have anything to add on the evidence that the watch was in the box at FedEx? What evidence there was of that? Your Honor, if the watch was not in the box, we have one of the most significant conspiracies of all time because the evidence was from Ms. Breslow. The watch was ordered in Geneva. It was sent from Geneva to New York, from New York to Montana, and then from Montana to FedEx. There's no testimony that there wasn't a watch in that box. Everybody during the entire process acknowledges that there was a watch in that box. There were two boxes. One box had the watch, and Ms. Breslow testified when she called Geneva and said, there's only one watch. Geneva's response was, well, there were two boxes. The watch was in one of those boxes. And I believe that's in evidence, Your Honor. Well, that might be, but she wasn't in New York and she wasn't in Montana. No question about that, Your Honor. She was not in New York. She was not in Montana. But she did have testimony and she did have conversations with what happened in New York, what happened in Geneva, and what happened in Montana. And it was at her direction that those boxes were sent. All right. Well, thank you, Your Honor.  Thank you, Your Honor. The case is submitted and the court will file a decision in due course. Counsel are excused. Please call the next case for argument.